WOODALL, Justice.
 

 The City of Huntsville (“the City”) appeals from a summary judgment ordering the City to refund to COLSA Corporation
 
 *639
 
 (“COLSA”) $982,933.99 in taxes the City had assessed against COLSA, plus interest. We vacate the judgment, dismiss the case, and dismiss the appeal.
 

 I. Factual Background
 

 COLSA describes itself as a “technology service and solutions company,” which engineers, designs, and tests weapons-systems programs for the United States Department of Defense, pursuant either to its own prime government contracts or to its subcontracts with other entities for similar work.
 
 [1]
 
 A dispute arose between COLSA and the City over COLSA’s alleged underpayment to the City of municipal consumer’s use tax. On April 14, 2009, the City sent COLSA a document styled “Notice of Final Assessment,” in which it sought $932,933.99 in underpayment of the use tax (“the notice”). The notice bore the signature
 
 stamp
 
 of Randall E. Taylor, finance director of the City.
 

 On May 13, 2009, COLSA filed in the Madison Circuit Court an instrument styled “Notice of Appeal [Appeal of
 
 Final Assessment
 
 of Municipal Consumer’s Use Tax]” (hereinafter referred to as “the tax appeal”) (bracketed language in original; emphasis added). The tax appeal stated, in pertinent part:
 

 “JURISDICTION
 

 “3. On April 14, 2009, over two years following the commencement of the audit examination, the City made an assessment of consumer’s use tax, penalty and interest against COLSA in the amount of $932,933.99 for the tax period of January 1, 2004 through December 31, 2006 (the
 
 ‘Final Assessment’). A
 
 copy of the
 
 Final Assessment
 
 is attached to this [tax appeal] as Exhibit ‘A’ (excluding the 88-page computational schedules).
 

 “4. This [tax] appeal is pursuant to § 24-95(b) of the Code of Ordinances of the City of Huntsville, Alabama [Ordinance No. 93-19, § 14(b) ], which, in relevant part, provides:
 

 “ ‘[A]t the option of the taxpayer, the taxpayer may appeal from any
 
 final assessment
 
 to the circuit court of the county or to the circuit court of the county in which the taxpayer resides or has a principal place of business in the state, as appropriate, by filing notice of appeal within 30 days from the date of entry of the
 
 final assessment
 
 with both the city clerk-treasurer and the clerk of the circuit court in which such appeal is filed. If the appeal is to the circuit court, the taxpayer must, also within the 30-day period allowed for appeal, either pay the assessment plus interest, or file a super-sedeas bond with the court in double the amount of the assessment.’
 

 “5.
 
 This court has jurisdiction
 
 over this [tax] appeal in that (i) this [tax appeal] has been filed with the City Clerk-Treasurer of the City and the Clerk of the Circuit Court of Madison County, Alabama, within thirty (30) days from the date of the
 
 entry of the Final Assessment
 
 and (ii) COLSA has paid the sum of $932,933.99 at or prior to the time of the filing of the [tax appeal], as evidenced by official bank check issued by First Commercial Bank attached as Exhibit ‘B’ hereto, constituting payment in full of the tax, penalty and interest of the
 
 Final Assessment
 
 and being the required payment amount as evidenced by the written confirmation of the City attached as Exhibit ‘C’ hereto.”
 

 (Emphasis added.) Thus, the tax appeal relied for its jurisdictional underpinnings on the proposition that the notice was a final assessment.
 

 Nevertheless, on December 31, 2009, COLSA filed a motion for a summary
 
 *640
 
 judgment, arguing that it was entitled to a judgment as a matter of law for the disputed amount of the tax because, it insisted, the notice was
 
 not a final assessment.
 
 The trial court agreed with COLSA’s argument and granted COLSA’s motion. In so doing, it also denied the City’s cross-motion for a summary judgment. Although the court held that “no effective final assessment was made by the City,” the court went further and decided the case
 
 on its merits,
 
 entering a judgment “in favor of COLSA, and against the City, for the amount that was paid to the City by COL-SA.” On September 28, 2010, the City appealed.
 

 That same day, the City moved the trial court for an order, pursuant to Rule 67, Ala. R. Civ. P., for leave “to discharge its obligations ... by unconditionally remitting the funds (together with all interest)” into the trial court. The next day, the trial court granted the City’s motion.
 

 II. Discussion
 

 One of the issues presented by the City in its briefs on appeal is whether the notice was a final assessment. The City contends that the notice
 
 was
 
 a final assessment, and it argues that the trial court erred in granting COLSA’s summary-judgment motion and in denying the City’s motion. The City asks this Court to render a judgment in its favor.
 

 In response, COLSA renews its arguments in favor of the
 
 invalidity
 
 of the notice. Its arguments rely on an array of legislative sources, including statutes, administrative regulations, and municipal ordinances. In particular, COLSA relies on the Alabama Taxpayers’ Bill of Rights and Uniform Revenue Procedures Act, Ala. Code 1975, § 40-2A-1
 
 et seq.
 
 (“the TBOR”), and regulations of Chapter 810-14-1 of the Alabama Administrative Code, which were adopted by the State Department of Revenue (“the department”) to implement the TBOR, Ala. Admin. Code (Dep’t of Rev.), r. 810-14-1-.01, as well as provisions of the Huntsville Municipal Code. According to COLSA, the notice was nonfinal, and therefore invalid, because, it insists, the signature
 
 stamp
 
 of Randall Taylor, which was affixed to the notice, did not comply with the signature requirements of the TBOR and the implementing regulations. We agree.
 

 “The TBOR prescribes uniform procedures that
 
 must be followed
 
 in assessing and collecting taxes. § 40-2A-1 and -2.”
 
 General Motors Acceptance Corp. v. City of Red Bay,
 
 894 So.2d 650, 653 (Ala.2004) (emphasis added). The TBOR is made applicable to use and sales taxes assessed by municipalities through the Local Tax Simplification Act of 1998, Act No. 98-192, Ala. Acts 1998.
 
 Red Bay,
 
 894 So.2d at 655. The TBOR requires that “[a]ll preliminary and final assessments ...
 
 shall
 
 be executed as
 
 provided by regulations
 
 promulgated by the department.” § 40-2A-7(b)(l)c. (emphasis added). See § 40-2A-7(a)(5) (“The department may ... make reasonable regulations concerning any matter administered by the department.”).
 

 The manner in which final assessments “shall be executed” is set forth in regulation 810-14-1-15(4), which provides: “The final assessment shall be entered by the ... assessment officer
 
 by signing
 
 the final assessment document. However, a final assessment document may also be signed
 
 by facsimile signature
 
 if a summary record which includes the information on the final assessment has been signed by the [officer] or his delegate.” (Emphasis added.)
 

 It is undisputed that the City had no signed “summary record which include[d] the information on the final assessment,” and the City
 
 concedes
 
 that regulation 810-14-1-15(4) “has been duly adopted by the
 
 *641
 
 City.” The City’s brief, at 60. Indeed, Huntsville Mun.Code, § 24-33, states:
 

 “The rules and regulations as promulgated by the state department of revenue as they pertain to the state sales and use tax are adopted for the purpose of providing the administration and enforcement, the rules ánd regulations for making returns, and for the ascertainment, assessment and collection under articles IV and V of this chapter.”
 

 However, the City argues:
 

 “But the signature on the final assessment by the City’s Finance Director
 
 manifestly was
 
 an ‘original signature’: he testified that he
 
 personally
 
 picked up an ink stamp and pressed it to the page to release ink in a pattern, just as he might have picked up a pen and pressed it to the page to release ink in a pattern.”
 

 The City’s brief, at 62 (emphasis in original). Thus, the City’s position is essentially that there is
 
 no difference
 
 between a manual signature and a “facsimile signature.” That position is untenable.
 

 Black’s Law Dictionary
 
 defines “facsimile signature” as “[o]ne which has been prepared and reproduced by some mechanical or photographic process. Many states have adopted the Uniform Facsimile Signatures of Pub. Officials Act.”
 
 Black’s Law Dictionary
 
 591 (6th ed.1990). The uniform act defines such a signature as “a
 
 reproduction by
 
 engraving, imprinting,
 
 stamping,
 
 or other means of the manual signature of an authorized officer.” Unif. Facsimile Signatures of Pub. Officials Act § 1(d) (1958), 13(11) U.L.A. 3 (2002) (emphasis added). A signature stamp is clearly such a reproduction.
 

 A facsimile signature may be used or affixed by
 
 anyone.
 
 Indeed, the City’s finance director testified by deposition that, although he personally stamped the notice in
 
 this
 
 case, other persons were authorized to, and did occasionally, use his signature stamp. If regulation 810-14-1-.15(4) had accorded legal equivalency to manual and facsimile signatures, it would not have distinguished the two modes by imposing the additional requirement of a manually signed “summary record” in the second sentence.
 

 To be sure, this Court has said that, “in the
 
 absence of a statute otherwise providing,
 
 [a signature] may be printed, stamped, typewritten, engraved, photographed or cut from one instrument and attached to another.”
 
 Dunning v. New England Life Ins. Co.,
 
 890 So.2d 92, 97 (Ala.2003) (quoting other cases) (emphasis added). It is “otherwise providfed]” in this case, however, by the department’s regulation, which has been duly adopted by the City. The regulation plainly precludes the use of a signature stamp to execute a notice of a final assessment in the absence of a manually signed “summary record which includes the information on the final assessment.” We conclude that, because no such record exists in this case, the notice was effectively unexecuted and, therefore, invalid.
 

 However, this conclusion does not produce the result that COLSA anticipates. The invalidity of the notice does not authorize the trial court to enter — or this Court to affirm — a judgment for COL-SA. This is so, because it is the appeal from an effective final assessment that confers upon the courts
 
 subject-matter jurisdiction
 
 to entertain the case in the first instance. Specifically, Huntsville Mun. Code, § 24-95, provides, in pertinent part:
 

 “(a) A taxpayer may appeal from any final assessment entered by the city by filing a notice of appeal with the city clerk-treasurer within 30 days from the date of entry of the final assessment, and such appeal, if timely filed, shall proceed as provided in this article for appeals to a hearing officer.
 

 
 *642
 
 “(b) In lieu of the appeal under subsection (a) of this section, at the option of the taxpayer,
 
 the taxpayer may appeal from any final assessment to the circuit court
 
 of the county or to the circuit court of the county in which the taxpayer resides or has a principal place of business in the state, as appropriate,
 
 by filing notice of appeal within 30 days from the date of entry of the final assessment
 
 with both the city clerk-treasurer and the clerk of the circuit court in which such appeal is filed. If the appeal is to the circuit court, the taxpayer must, also within the 30-day period allowed for appeal, either pay the assessment plus interest, or file a superse-deas bond with the court in double the amount of the assessment....
 

 “(c) The filing of the notice of appeal with the city clerk-treasurer for a hearing before a hearing officer or,
 
 in the case of appeals to the circuit court, the filing of the notice of appeal with both the city clerk-treasurer and the clerk of the circuit court
 
 in which such appeal is filed and also the payment of the assessment in full and applicable interest or the filing of a bond as provided in this section,
 
 are jurisdictional.
 
 If such prerequisites are not satisfied within the time provided for appeal,
 
 the appeal shall be dismissed for lack of jurisdiction.”
 

 (Emphasis added.) Indeed, COLSA quoted from these very provisions in the tax appeal under the heading
 
 “Jurisdiction.”
 

 As we stated in
 
 Cadle Co. v. Shabani,
 
 4 So.3d 460, 463 (Ala.2008): “When the absence of subject-matter jurisdiction is noticed by, or pointed out to, the trial court, that court has no jurisdiction to entertain further motions or pleadings in the case. It can do nothing but dismiss the action forthwith.” It follows that when a trial court purports to exercise jurisdiction where it has none, every order and judgment entered pursuant thereto is void
 
 ab initio.
 

 III. Conclusion
 

 Because the jurisdictional basis for the tax appeal is absent, § 24-95(c) of the Huntsville Municipal Code expressly directs the dismissal of the action “for lack of jurisdiction.” Every order and judgment entered in this case was void, including the judgment from which this appeal was taken. A void judgment will not support an appeal.
 
 Health Care Auth. for Baptist Health v. Davis,
 
 [Ms. 1090084, January 14, 2011] — So.3d -, - (Ala.2011). Consequently, the judgment is vacated, and the case and the appeal are dismissed.
 

 JUDGMENT VACATED; CASE DISMISSED; AND APPEAL DISMISSED.
 

 COBB, C.J., and BOLIN and MAIN, JJ., concur.
 

 MURDOCK, J., concurs in the result.
 

 [1]
 

 . This description is exclusively for the purposes of
 
 this opinion.